Case number 3-210459, Harish Bhatt Appellant v. Sandeep Kumar Appellate. Good afternoon, gentlemen. Mr. Garza, if you're ready to proceed, you may do so. Thank you, Your Honor. For the record, Raymond G. Garza, on behalf of the plaintiff appellant, may it please the court, counsel for the defendant. Justices, this is a case involving a breach of an oral contract. I will give you a brief background and answer any questions as well as lay out our arguments. So this case involves Harish Bhatt, the plaintiff. He formed a romantic relationship with a Ms. Guvinder Kaur. Ms. Kaur is the wife of the defendant. Sometime in 2017, the plaintiff moved in with Ms. Kaur and the defendant. On June 27, 2017, Ms. Kaur gave birth to a son. The defendant, Sandeep Kumar, is a truck driver by trade. And sometime in 2017, defendant's truck was destroyed in a fire. Plaintiff alleges on August of 2017, plaintiff, defendant, Ms. Kaur and Ms. Kaur's mother were present for a conversation. During this conversation, plaintiff alleges an oral agreement was reached whereby, number one, the defendant would pick out a truck that would meet his needs. Number two, plaintiff would pay for the truck. And number three, any lump sum defendant would receive as a result of any insurance payout for the destroyed truck would be paid to the plaintiff. Number four, thereafter, plaintiff would pay to the plaintiff to balance what was owed on the new truck in monthly installments of $3,000 until it was paid. A few days later, on August 24, 2017, defendant, plaintiff and Ms. Kaur go to Peter and commercial semi trucks of the nature that the defendant drives for his employment. Defendant found a truck and plaintiff paid for the truck in the amount of $37,277 in certified funds. Plaintiff alleges the next day defendant told the plaintiff he would not honor the agreement they had reached in the conversation that I had discussed before. Immediately upon hearing this, the plaintiff attempted to stop delivery of the truck by having his attorney send a letter to Peterbilt. The truck was delivered to the defendant and has been in his possession. Defendant has not paid anything towards the truck as of today's date. Most of the above facts are not in dispute, with the exception that the defendant had a slightly different understanding of what the agreement that was reached. Defendant testified under oath that he and the plaintiff had a meeting in the driveway of their house they were sharing. At this alleged meeting, defendant testified plaintiff offered him to pay for the truck if the defendant kept his name on the birth certificate of the child born to Ms. Kaur. Ms. Kaur, in the transcript of the trial on this, on transcript page number 69, starting on line 12, Mr. Kumar testified, no, he said keep the name on the birth certificate. Question, okay, so at the time he approached you and asked you, I will give you a truck or money to purchase a truck if you keep your name on the birth certificate. Yes. The agreement that Mr. that the defendant testified to was an agreement by which if he kept his name on the birth certificate, he would not have to pay back the money that was owed on the truck. Five days later, after they had picked out the truck, defendant filed a paternity suit to Regardless of which version you believe a contract was formed, the friend had breached both versions of the contract. He breached the plaintiff's version by not paying in accordance with the payment agreement allegedly reached days before the purchase. He breached his own version by not keeping, by not keeping his name on the birth certificate and seeking to establish paternity other than him. As a result, the plaintiff has been damaged the amount of money he spent on the defendant testified that he was asked regarding a series of questions regarding whether this was a gift to which he said he thought it was a gift. At trial, it was established through his testimony that it wasn't a gift. It was actually, it was actually another agreement by which he was to perform by keeping his name on the birth certificate. He failed to do that. The trial court found that I've got a question for you. Sure. You obviously, you're representing the player. So, you know, you've got the burden proof. And what you've got here is your client, the plaintiff testifying to a version of what he believes the contract was the terms, the conditions, the repayment, and the defendant denying, right? Then we've got the defendant testifying to a version of a conversation he had, and your client denies that. So, I mean, it comes down to a credibility issue, doesn't it? I mean, the trial court has to make a choice. Am I going to believe you? Am I going to believe the other guy? Or am I going to believe nobody? That's correct, Justice Dougherty. I think that's a correct assessment. And if I may, I think what the trial court missed was defendants having to testify, even if you assume defendant's version is correct, it's still a contract, a contract which he confesses. Let's go down that path for a moment. If the defendant's version were accepted, your client testified he'd never do that because it's illegal, right? That was something he did testify. That's correct. Right. And if it's an illegal contract, it's not enforceable, right? Well, that was plaintiff's testimony. He's not a lawyer. And obviously, he felt that that was his perception as to why he would not enter into a contract. I believe it is an enforceable contract. I don't believe it is. It's a fraud on the state of Illinois, isn't it? Sorry? It's a fraud on the state of Illinois as to the determination of who would owe support by keeping a person's name on the birth certificate who wasn't the father. I would agree. I would agree with that, that it is an inaccurate statement to have that on the birth certificate, knowing that it's not an accurate statement. Okay. Thank you. That being said, we believe it is the position of the plaintiff that there had been an existence of contract. We believe that that was breach. We believe there's no question and no issue as to or dispute as to the damages. The parties, it's undisputed that the plaintiff did pay out the money that he did pay out. That money has not been paid out in any shape or form. We believe that, again, the contract has been formed and has been violated. As such, we asked this court to overturn the trial court's determination with regards to this matter and to award the plaintiff the amount of damages he claimed in his complaint, the $37,200 plus any statutory interest that may apply. Any other questions? No questions for me. Thank you, Mr. Garza. Mr. Schrock, if you're ready to proceed. Yes. Thank you, Your Honor. Again, John Schrock on behalf of the Plaintiff's Office. She did so stating in the judgment on page six that when all the evidence presented at trial and the demeanor and credibility of the witnesses, she found that the plaintiff failed to meet his burden of proof. That therein really is sort of, in my view, takes care of the plaintiff asserts essentially that his uncorroborated testimony as to the oral contract is enough to prove the oral contract in this case. I submit that it's not. The evidence in this case actually weighs against any type of an oral contract. Number one, there was no other corroborating evidence. There was no text messages, there was no emails, there was nothing else of a documentary nature that supports plaintiff's position of a contract in this. Another thing that the court pointed out also was that the plaintiff attached affidavits of two people that were supposed witnesses to this but didn't call them at trial. And the trial court could take that as an adverse inference against plaintiff that those witnesses would testify adversely to the plaintiff in this manner. So all the plaintiff has, and there's, you know, I rely on my brief on the jury instruction, which if it's good enough for a jury, a trial court can certainly use that, make that same inference. So he alleges the existence by his own affidavits that he attached to his complaint of the existence of witnesses but curiously did not call either of them as witnesses at trial. The other thing is that the check in this case was made to, not to my client, it was made to the Peterborough dealership. And in my view, if there was a loan in this case, if Mr. Garza's client was really going to make a loan in this case, he would have made the check payable to my client and then merely by putting on the that this was in fact a loan type of an agreement, not a gift. He didn't do so. And the trial court pointed out that Mr. Garza's client is a sophisticated businessman. He works in a heavily regulated industry, has had lawyers in the past and knows how to get lawyers and did absolutely nothing that a reasonable business person would do to secure his interest in this matter. He could he could have had my client execute some sort of a loan or security interest agreement. And he did none of those things, all of which really leads to the, you know, unmistakable conclusion that this really, you know, when you weigh everything, he just failed to prove the fact that it's a contract that there was an agreement reached on any level. There's there's just a blank proof problem that he has. His oral testimony just doesn't cut it, especially when the defendant, you know, refutes his testimony. And given the standard review, which I submit is the manifest weight of the evidence, that there's nothing here that for you to reverse this because the trial court was within her discretion to find against plaintiff on his claim for an oral contract. And then on the fraud theory, you know, I looked at that transcript again. I don't think he really, you know, mentioned the fraud count at all. So my point is, I think that's been waived. And then counsel comes up with this unclean hands argument, which I submit he's he's raising for the first time on appeal. I read the transcript again. I don't see the words unclean hands anywhere in the transcript. So you can't raise something on appeal for the first time. So justices, I submit that given the record in this case, and it's really, you know, the fact of the matter is plaintiff's own uncorroborated testimony. There were no other witnesses. There's no other corroborating evidence. And the fact that the check, you know, was written out to the Peter dealership given to my client. And there's nothing that the plaintiff did in any way to try to secure some sort of an interest or make a good argument, at least, that this was, in fact, a loan instead of some gift that he was making to my client, given the sort of odd situation that they had. So I submit that, you know, I mean, I can understand the plaintiff is upset, but at the end of the day, he just failed to prove his at trial. And there's no basis for the appellate court here, your justices to reverse the trial courts, very well reasoned and ruling that this, you know, she found this guy to be a sophisticated person, he's been around, he should know better that if he wanted to secure some interest in this, what he could have done. And I submit it would have been as easy as putting on the check, even if it was a certified check, that this was being a note, that this was a loan to my client, he could have wrote that on the memo, and he did nothing. And then, you know, sort of stands by now, after the fact, he wants to claim that there's a loan with all this, the terms on it, a repayment plan. And there's just no evidence for that. So I respectfully submit that there's been a failure of evidence at the trial court. And there's no basis to overturn the trial courts ruling. Thank you. I don't see any questions. So thank you, Mr. Schrock. Mr. Garza, you may proceed with your rebuttal. Yes, thank you. First of all, just a couple of the points that Mr. Schrock made regarding no text messages or anything, any memorialization with regards to that. Yes, it is true. There are no text messages. There are no messages or text messages with regards to the defendant's version of what happened either. And in particular, his affirmative defense that this was somehow a gift. With regards to affidavits that were attached to the complaint, yes, the affidavits of Gouverneur Guare, the defendant's wife, and her mother, they were not called at trial. But I'm not aware, and nor have I seen in any case law, that somehow not having them testify is somehow an inference that they would testify to the negative. Mr. Schrock, certainly, and the defendant, could have called them as witnesses if they, in fact, believed that. And they themselves did not do that. With regards to the sophistication and what should have been done or could have been done in terms of making it the plaintiff, Harish Bhatt is a businessman. But he testified at trial that he has never loaned anybody money. He has not done this before. He didn't know. And again, this is a domestic situation. The parties lived in the same house. So there was a level of not sophistication that they were, as being family members, that they were comfortable with each other in terms of having these discussions. With regards to the waiver of the fraud count, first of all, the court just found that there was no, they didn't find that there was a waiver. The complaint that has been filed alleges waiver. We believe that there was testimony at trial that proves there was waiver, or no waiver of fraud, but that there was a, in fact, fraud was committed. And there was evidence at trial that he knew that he was not the father. He knew that he accepted the money from the plaintiff. And then five days later, reneged on that agreement and does the opposite. We believe that there was sufficient evidence to show that the intent of the defendant was to defraud the plaintiff. He had no intention to honor whatever agreement that they had, and that he was going to do what he was going to do. That's evident from the record. So even under a manifest weight evidence standard, which we have also cited as a standard of review, and we're not here to say that the trial court's determination with regards to credibility needs to be replaced, but however, the trial court did miss some key aspects of some of the testimony, namely the agreement that the defendant himself testified to. Defendant himself did not testify to a gift where there was donated of intent. The defendant testified to an agreement, an agreement he confesses he reneged on. So based on that, and based on what we have submitted in our briefs, we respectfully ask this court to overturn the decision of the trial court and award the plaintiff the amount of damages he requests in his complaint plus any statutory interest. Thank you, Mr. Garza. Thank you both for your time. This matter will be taken under advisement.